## WICHITA COUNTY et al. v. TITTLE.
### No. 3372.

Court of Civil Appeals of Texas. Amarillo.
March 26, 1930.

Rehearing Denied April 30, 1930.

Wayne Somerville and Harris & Martin, all of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee

HALL, C. J.

The appellee, Tittle, a former tax collector of Wichita county, sued the county to recover $13,406.01, which he claims he turned over to the county under an agreement to the effect that if the act of the Legislature, regulating the compensation of tax collectors, which took effect on October 20, 1919 (Acts 36th Leg. (1919) 2d Called Sess. c. 64, § 2) and which act repealed a prior act of the Legislature of 1915 (Acts 34th Leg. (1915) c. 147, § 3) was declared unconstitutional by the Supreme Court, that said sum of money would be returned to him by the county.

The amount sued for is alleged to be 5 per cent. commission on delinquent taxes collected by him during the period beginning December, 1919, and ending December, 1922.

He alleges, in substance, that from the first day of December, 1919, until the 31st day of December, 1922, as such official, he collected delinquent taxes due the state and county, aggregating $268,129.77, which he turned over to the county; that he also turned over excess fees, which the county demanded, in the total sum of $23,709.46; that at the time he turned over to said county said excess fees, he was informed by the county judge, county commissioners, and county attorney, representatives of the county, in a session of the commissioners' court, and was advised by said officials, that he was not entitled to retain 5 per cent. on the amount of all delinquent taxes collected, in addition to the regular commission allowed him by law; that at that time he demurred, claiming that as tax collector he was entitled to retain the 5 per

cent. on such delinquent taxes in addition to the amount allowed him under the law, known as the fee bill; that said county, through its said representatives, informed him that the act of 1915, allowing such 5 per cent., had been repealed by the act of 1919, and demanded that he turn over to it all the delinquent taxes so collected, and denied him the right to retain the 5 per cent.; that he told said officials that he believed the said act of 1919 was invalid and that a case was then pending in which the validity of the act would be determined, and that said officers told him that, if he would pay over the entire proceeds and it should be determined that the act of 1919 was illegal, said county would return said sums to him; that relying upon and believing the promise of said county's representatives, and that said promise was valid, he did turn over all delinquent taxes, without retaining said 5 per cent. commission.

He alleges that said act of 1919 was finally, on December 5, 1928, declared by the Supreme Court to be invalid, and that he immediately presented his claim, here sued upon, to the auditor of said county; that he fully and completely complied with all the provisions of the law of 1915 in the collection of delinquent taxes, and, by reason thereof, was entitled to retain the 5 per cent. commission sued for; that the auditor of said county refused to allow his claim and he immediately presented it to the commissioners' court, demanding his money, and said court, by order duly entered, rejected said claim.

By way of answer, defendant county interposed a general demurrer and set up the statutes of two and four years' limitation by demurrer and by special plea; also, excepted to that part of the petition which alleges that the county and its representatives agreed that the 5 per cent. commission should be returned to him.

There is a further exception to that part of the petition which alleges that the county judge made certain agreements with him, regarding the return of the 5 per cent. commission.

The defendant further defended upon the ground that the payment had been voluntarily made, with a knowledge of all the facts and was, therefore, not recoverable.

By a supplemental petition, Tittle alleged that the county was estopped to defend upon the ground of limitation or voluntary payment, and alleged that the commissioners' court had entered an order, within the past four years, agreeing to pay the sum sued for.

The case was submitted to a jury by twenty-seven special issues, some of which were not answered. The following issues, as numbered, were answered as stated:

(4) That M. L. Tittle during the years in question, prepared and mailed, to the addresses of each record holder of land or lots situated in Wichita county, notices showing amount of taxes appearing delinquent or past due and unpaid, against all such lands and lots, according to the delinquent tax records of said land and lots.

(5) That such notices contained a brief description of the land or lots appearing delinquent on the various sums or amounts due against such lands or lots for each year that they appeared delinquent according to such records.

(6) That he furnished to the county attorney duplicates of such statements mailed to the taxpayers, together with similar statements and lists of lands and lots in the name of unknown persons, or in the name of persons whose correct addresses or place of residence said tax collector was unable, by the use of due diligence, to discover or ascertain.

(7) That such notices recited that unless the owner or owners of such land or lots should pay the tax collector within ninety days from the date of the notice, the county or district attorney would institute suit thereon.

(8) That M. L. Tittle offered or tendered, to the county attorney of Wichita county, the duplicate copies of all of said notices.

(9) That the county attorney of Wichita county requested that Tittle retain temporarily said notices until a desirable time for the purpose of filing suit thereon.

(10) That said copies were so kept by M. L. Tittle under the supervision, control, and direction, and for the benefit of the county attorney.

(11) That Tittle furnished all additional data necessary for the county attorney to file suit and obtain a valid judgment on all delinquent taxes, as shown by the delinquent tax records of Wichita county.

(12) That Tittle every two years prepared a delinquent tax record or supplemental report.

(13) That the commissioners' court, acting as such, directed Tittle to pay over to Wichita county, the 5 per cent. commission on the amount of all delinquent taxes collected between December 1, 1919, and December 1, 1922.

(14) That the commissioners' court, acting through its county judge and commissioners, did not inform and direct M. L. Tittle that if he did pay over to Wichita county all moneys collected as delinquent taxes while he was in office, that if it later was determined that he was entitled to 5 per cent., said Wichita county would return to him said 5 per cent. commission.

(17) That the commissioners' court did not enter into an agreement with M. L. Tittle that the 5 per cent. commission on delinquent

taxes would be paid by Tittle to the treasurer of Wichita county, pending the determination of the validity of the 1919 act of the Legislature.

(19) That the county judge of Wichita county directed Tittle ˙to pay over to Wichita county the 5 per cent. commission in question.

(20) That the county judge informed and directed Tittle that if he would pay over to Wichita county said moneys, that if it was later determined that Tittle was entitled to 5 per cent., Wichita county would return to him said 5 per cent. commission.

(21) That Tittle believed said statements and relied thereon, and, by reason thereof, paid said commission to Wichita county.

(22) That Tittle would not have paid said money to the county if the county judge had not made this promise to him.

(23) That Tittle and the county judge entered into an agreement that the 5 per cent. commission would be paid to the treasurer, pending the determination of the validity of the act of 1919.

(24) That said money was so paid to the treasurer to be held by Wichita county, pending the determination of the validity of the 1919 act.

(25) That the commissioners' court did not, in session, agree with Tittle that if he would pay the 5 per cent. commission to the county treasurer, that Wichita county would repay him in the event it was determined by the courts that the 1919 act was invalid.

(27) That Tittle paid such money to Wichita county voluntarily.

This case is submitted here by appellant upon thirty-four propositions, raising numerous issues of law relating to the defenses urged in the trial court. In order to dispose of the controversy, we deem it unnecessary to discuss all of the propositions, nor will we undertake to dispose of them in the order presented in the brief.

The jury has found that Tittle paid the money under an agreement with the county judge, and that he had no contract with the commissioners' court.

The thirteenth finding is that the commissioners' court, as such, directed Tittle to pay the money sued for over to the county, but that said court did not enter into any agreement that the money would be held by the county, pending the determination of the validity of the act of the Legislature of 1919.

The nineteenth finding is that the county judge directed Tittle to pay the money to the county, and that the agreement that the county would hold it subject to determination of the validity of the act of 1919, was made only with the county judge; and it was further found by the jury that Tittle would not have

paid the money to the county but for such agreement, and did pay it, relying upon the promise of the county judge that it would be refunded to him in the event the Supreme Court should decide, in the case of Bitter v. Bexar County, that the act of 1919, the effect of which was to deprive tax collectors of the 5 per cent. commission upon delinquent taxes, was unconstitutional.

It appears that in that case, 11 S.W.(2d) 163, decided December 5, 1928, the Supreme Court held that said act (Acts 36th Legislature, 2d Called Sess. c. 64, § 2)· was unconstitutional, and upon such holding the appellee insists that he is entitled to recover the 5 per cent. which he had paid under˙ the agreement above mentioned.

The appellant contends that appellee cannot recover because the payment was voluntarily made. This question will be discussed later.

The further contention is made that the agreement alleged by Tittle was ultra vires and void, and that neither the county, the commissioners' court, nor the county judge, had authority to make any such contract.

■ It is said in 41 C. J. 38, § 17, that money paid under an ultra vires contract, or one which is void or invalid, or which the payee had no authority to make, may, nevertheless, be recovered under the rules enforced in the common-law action of money received, and the law seems to be settled that a recovery will be decreed where one has obtained money from another by oppression, imposition, extortion, deceit, or taking an undue advantage, and the law will imply a promise from the recipient of the money to return it to the lawful owner under such conditions. 41 C. J. 46. Scott v. Jackson (Tex. Civ. App.) 147 S. W. 336; Merryfield v. Willson, 14 Tex. 224, 65 Am. Dec. 117; First Nat'l Bank v. Whiteside (Tex. Civ. App.) 138 S. W. 420.

In the case of Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841, it appears that the mayor of the city employed the appellant to perform legal services for the city in connection with certain projects looking to the acquisition by the city of a gas plant, and the issuance of bonds, etc. Sluder sued upon an implied contract to pay the reasonable value of services rendered under such employment, and was denied a recovery, both in the trial court and in the Court ˙of Civil Appeals, upon the ground that the city charter denied the city the right to make a contract except by ordinance duly enacted in accordance with the charter provisions. Upon writ of error, the Supreme Court held that where a municipality received benefits under a contract illegal because not in conformity with the constitution or statutes, it would nevertheless, be held liable upon an implied·contract for the reasonable value of

the benefits received. The Texas cases bearing upon the issues, were reviewed by the Commission of Appeals, which rendered the decision, and the conclusion is announced that in such a case a plaintiff may recover, under an implied contract, for benefits conferred upon the municipality, whether the benefits consisted of money, property, or personal services.

In the Sluder Case, plaintiff did not attempt to recover upon the illegal contract but, as stated by the opinion of the court, sought to recover upon the implied contract of the city to pay for services which it had accepted and which had inured to its benefit.

In the instant case, Tittle seeks to recover upon the contract alone. He alleges that the county's representatives informed him that if he would pay over the entire proceeds and it should be determined afterward that the act of 1919' was void and he was entitled to retain the 5 per cent., that the county would return the amount so paid and that, relying upon the promise of the county's representatives as valid and binding, and believing it would return said sum of money to him, he did turn over the funds in his hands to the county. He further alleges that but for the promise and representation on the part of the representatives of the county, he would not have turned over and delivered to the county said $13,406.01.

By his supplemental petition, he alleges that the county is estopped by the agreement from pleading limitation, and that the money was voluntarily paid, in bar of his right to recover. It therefore appears that he bases his right to recover solely upon the express contract made with the county judge, rather than an implied contract arising from the fact that the county received his money.

■ The cases cited by the Supreme Court in the opinion in the Sluder Case, hold in effect that the attempted agreement made between Tittle and the county judge is void for several reasons. This being the case, Tittle cannot recover in this action upon the theory of an express trust. If he is entitled to hold the county as a trustee at all, it must be upon the ground that the county is a resulting or constructive trustee, and his pleadings are not so framed as to entitle him to recover upon either theory. Under his allegations, he must hold the county liable as an express trustee, or else the theory of a trust utterly fails.

■ An express trust cannot be created to effect a purpose which is illegal, 1 Perry on Trusts (7th Ed.) § .99; and the judgment of the court cannot be sustained upon that theory, as suggested by appellee.

■ It is further the rule that a resulting trust cannot be declared, if to do so would violate a positive rule of law or statute. 1 Perry on Trusts (7th Ed.) § 131.

■ At considerable length and with much force, appellee insists that because the county judge, acting under the authority of R. S. art. 7295, had directed him to pay the money, herein sued for, over to the county, and because if he had refused to do so he could have been prosecuted under P. C. art. 107, the payment by him was involuntary and that the parties to the transaction, by reason of the fact, dealt upon unequal terms. No threat to prosecute him, if the money was not paid, was alleged or proven.

According to his pleadings, appellee paid the money under a valid and legal agreement, by the terms of which it was to be repaid if the act of 1919 was declared unconstitutional. This is the allegation of a voluntary payment and is inconsistent with the idea of duress or pressure. His testimony supports his allegation. He said: "I would not have paid it into the County if I had known that they were going to plead limitation on my getting it back. I believed what the County Judge and the Commissioners told me that day. I relied upon the truth of what they told me, that the County would pay it back to me, if I paid it in. Relying upon that, I paid it to them. * * * I would not have paid it to the County, if I had not believed that the statement they made was true and correct. I would not have paid it to the County, if I had known that they were going to plead voluntary payment and limitation on me."

In connection with the submission of special issue No. 11, the court should have informed the jury what additional data was necessary to be furnished the county attorney by Tittle. R. S. art. 2190.

From what we have heretofore said, it follows that the court erred in overruling the appellant's general demurrer to the plaintiff's petition.

■ Since appellee could not recover upon the express contract alleged, a discussion of the effect of the statutes of limitation upon his right to recover thereon is unnecessary. In view of another trial, however, it is proper for us to say that the general rule is that trustees in invitum and ex maleficio cannot plead limitation. 1 Perry on Trusts (7th Ed.) § 245; 2 Perry on Trusts (7th Ed.) § 865.

We cannot say what effect article 7691, R. S. 1911, as amended by Act of the 38th Legislature (1923) 2d Called Sess. c. 13, has upon appellee's right to recover, until the Supreme Court has finally reviewed the case of Turner v. Barnes (Tex. Civ. App.) 19 S.W.(2d) 325, in which a writ of error has been granted.

For the reasons stated, the judgment is reversed, and the cause remanded.