**MANGUM ROAD CENTER et al.,**
**Appellants,**

**v.**

**Peter DISCLAFANI, Appellee.**

**No. 232.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 10, 1969.

Rehearing Denied Jan. 14, 1970.

C. B. Stephenson, Schlanger, Cook & Cohn, Houston, for appellants.

Karl E. Kraft, Bobbitt & Kraft, Houston, for appellee.

TUNKS, Chief Justice.

In August of 1961, James C. McMinn, J. Frederick Welling and Anthony Luciano, doing business as a partnership under the name of Mangum Road Center, were in the process of building a shopping center on Mangum Road in the City of Houston, Texas. At that date some of the improvements had been finished and were occupied. Others were in various stages of construction. Since that date Anthony Luciano has died and the ownership of the shopping center has been transferred to Marie Felbinger. She, McMinn and Welling were plaintiffs and cross-defendants in the trial court. Those parties will sometimes be called the "lessors."

Peter DiSclafani was the defendant and cross-plaintiff in the trial court. He will sometimes be called "the lessee." In August of 1961 he had just received his license as a dentist and was looking for an office in which to conduct his practice. He entered into negotiations with Anthony Luciano which negotiations culminated in the execution of a lease contract under which Peter DiSclafani was to occupy the space in the shopping center for a term of five years. At the time of the negotiations the space to be occupied by DiSclafani had not been finished and the negotiations included discussions as to such matters as the location of the partitions in the finishing of the space so as to make is adaptable to the use contemplated. It was later finished

in accordance with the specifications agreed on and the lessee moved in about October 15, 1961.

The lessee continued to occupy the leased premises until March 31, 1962 at which time he vacated them under the circumstances hereafter discussed. The lease provided for a rental of $200 per month for the first 24 months and $235 per month thereafter for the remainder of the term. The total rent paid by the lessee was $400. After the lessee's abandonment of the premises the lessors took possession and tried to relet them. They were able to rent them only for a short period of time during which they received a total rental of $140. The lessors filed this suit seeking recovery of the balance due them under the lease. The lessee answered denying liability because of fraudulent inducement to his execution of the lease and because of faulty construction of the building. The lessee also filed a cross-action by which he sought a recovery of damages sustained by him because of the alleged faulty construction.

The case was tried to a jury. On the verdict received the trial court rendered judgment that the plaintiffs, lessors, take nothing by their suit for rent under the lease, for cancellation of the lease and that cross-plaintiff, lessee, take nothing by this cross-action for damages allegedly caused by faulty construction. The jury findings were adverse to the lessee insofar as they related to his defense and cross-action based upon faulty construction. No appeal has been taken from the judgment on the cross-action. The plaintiffs, lessors, have appealed from the adverse judgment on their suit for rents under the lease. Under the circumstances we need take no further note of that phase of the case relating to the alleged faulty construction and may concern ourselves with only that phase of the case relating to the alleged fraudulent inducement.

The pertinent allegations of the defendant lessee as to fraudulent inducement are to the effect that during the negotiations leading up to the execution of the lease Anthony Luciano told him "that a substantial part of the yet uncompleted section would be occupied by a large drug store," and that the building "would be completed within a short time." It was alleged that "such representations were made to Defendant and others as statements of fact and for the purpose of inducing Defendant to lease the premises in question." There were further allegations that the statements were false, that they were made to induce defendant to execute the lease, that he relied on them in executing the lease and that they were material inducement. There was no allegation that Luciano knew the statements were false when he made them.

At the time the lessee vacated the premises, and in fact, up to the time of the trial, the building had not been completed and none of it was occupied by a drugstore. The plaintiffs', lessors', primary case was established without any conflict and no issues were submitted with reference thereto. All of the issues submitted had to do with the lessee's affirmative defenses and his cross-action.

Special Issue No. 1 submitted to the jury was in the following language:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that Anthony Luciano represented to Peter Disclafani that the owners had a commitment that there would be a large drug store located in Mangum Road Center Building within a reasonable time?"

This issue was followed by other issues as to falsity, purpose of inducement, reliance and materiality of inducement. All were answered favorably to the lessee.

Special Issue No. 6 submitted to the jury was in the following language:

"SPECIAL ISSUE NO. 6

"Do you find from a preponderance of the evidence that Anthony Luciano

represented to Peter DiSclafani as a then existing fact that the Mangum Road Center Building would be completed in the near future?"

This issue was followed by the same related issues as those submitted in relation to Special Issue No. 1. There was no issue inquiring as to whether Luciano knew the falsity of the statement at the time of making it.

By points of error the appellant takes the position that the defense submitted to the jury in Special Issue No. 1 through No. 5 was not raised by the pleadings. Those points of error are sustained. The word "commitment" as used in the context in which it is used in Special Issue No. 1 is defined in Webster's New International Dictionary, unabridged, as:

"The obligation or pledge to carry out some action or policy * * * an engagement by contract or purchase order to assume a financial obligation * * *."

The lessee's pleading, the pertinent language of which is set out above, cannot be construed as an allegation that Luciano represented that the owners had a "commitment"—a contract, an engagement or some other form of obligation—pursuant to which a drugstore would be located in the shopping center. The allegation can be construed only as one to the effect that Luciano said that the owners intended, expected, anticipated or were of the opinion that there would be a drugstore in the shopping center in the future. The two meanings are substantially different. To say that the owners have a commitment is a statement of an existing fact which does not require an inquiry into the state of the mind of the speaker in order to determine its truth or falsity. To say that something will occur in the future usually means only that the speaker is of the opinion that it will so occur and is a statement of an existing fact only that it implies the existence of such opinion in the speaker's

mind. Its truth or falsity can be determined only by inquiry into the statement of the mind of the speaker. Harris v. Sanderson, Tex.Civ.App., 178 S.W.2d 315, writ ref., w. o. m.; Texas Farm Bureau Cotton Ass'n. v. Craddock, Tex.Civ.App., 285 S.W. 949, writ ref.

▮ It is error for the court to submit issues as to, and to base its judgment upon, an affirmative defense not raised by the pleadings of the defendant. Parker v. Gulf C. & S. F. Ry. Co., Tex.Civ. App., 401 S.W.2d 265, no writ hist.; Schodts v. American Hospital & Life Ins. Co., Tex.Civ.App., 313 S.W.2d 946, writ ref., n. r. e.; Rules 67, 279 and 301, T.R.C.P.

▮ In the submission of issues the trial court is not required to follow the exact language of the pleadings. Rhodes v. Liberty Welding Works, Tex.Civ.App., 391 S.W.2d 796, writ ref., n. r. e. However, the language of Special Issue No. 1 in this case was so significantly different from the language of the defendant's pleading that the court erred in submitting it over objection.

Other of appellant's points of error contend that there was no evidence upon which to base the jury's finding to Special Issues 1 through 5. Those points of error, too, are sustained.

The testimony of the lessee relating to the representation inquired about in Special Issue No. 1 was that Luciano told him "that the end-space (space of the building to be built) was going to be a drugstore by one of the large major chains." He had talked to Luciano four or five times before signing the lease and "statements concerning the drugstore going into the building" were made on each of those occasions. On those occasions Luciano said "that a drugstore was going in." In response to questions by the lessors' attorney the lessee testified:

Q. "Did Mr. Luciano say that he had a written lease for a drugstore?"

A. "No, he just said there was going to be a drugstore there."

Q. "He didn't say that he had a written lease?"

A. "No, sir."

Q. "He just said that there would be a drugstore?"

A. "Yes, sir, he said that."

On being asked whether Luciano had said that they had leases for the rest of the space in the uncompleted building the lessee said "he never mentioned that at all."

Written interrogatories propounded to a witness, Dr. Paul Page, and the answers thereto, were read into evidence. He testified that he had occupied a space in the center near that occupied by the defendant, having moved in at about the same time. He testified that "Anthony J. Luciano stated, in my presence, that a drug store was coming into the Mangum Road Center where Dr. DiSclafani and I were to have our offices."

The defendant's wife testified that as her husband was moving into the leased premises she asked Luciano, "When is the drugstore going to start coming in?" and he answered, "Right away." This conversation occurred more than two months after the lease had been executed.

■ That is the only evidence in the record relating to the subject matter of Special Issue No. 1. It does not constitute any evidence that Luciano ever told the defendant that the owners had a lease or any other form of commitment by which a drugstore was to be established in the center. There was no evidence to support the jury's affirmative answer to Special Issue No. 1.

■ The other representation which the lessee alleged to have been made fraudulently to induce him to sign the lease is to the effect that the buildings would be completed in the near future.

That phase of the lessee's case was submitted in Special Issues 6 and the 4 following related issues. The lessor objected to the submission of Special Issue 6 on the ground that an answer to it and the other issues submitted did not form the basis of a judgment since there was no issue inquiring as to whether Luciano, at the time of making the statement, intended to complete the Center within the near future. The lessor objected to Special Issue No. 7, which asked whether the representation was false, because that issue did not inquire as to Luciano's present intention as to the completion of the building. Those objections were preserved by assignments in the lessor's motion for new trial and are the subjects of points of error to this Court. Those points of error are sustained.

■ It is the general rule that a statement, to be fraud, must be a statement as to an existing or past fact. 37 C.J.S. Fraud § 6, p. 222. One making a false statement as to an existing or past fact may commit a fraud even though he does not know the statement to be false. Stowe v. Wooten, (Tex.Com.App.), 62 S.W.2d 67; Wilson v. Jones, (Tex.Com. App.), 45 S.W.2d 572; Miller v. Latham, Tex.Civ.App., 276 S.W.2d 858, writ ref., n. r. e. A statement to the effect that something will occur in the future may constitute a promise, a prediction, or an expression of an opinion. Such a statement concerning something that is to occur in the future at least implies an existing fact—the present intention of the speaker to perform the promise, the belief of the speaker in the prediction, or the existence in the speaker's mind of the opinion that the event will occur in the future. Schilder v. Fort Worth National Co., Tex.Civ.App., 81 S.W.2d 247, err. dismd.; Texas Farm Bureau Cotton Ass'n. v. Craddock, supra.

The language appearing in Edgington v. Fitzmaurice, 1882, L.R. 29 Ch.D., 459, 483, is often quoted by American courts and textwriters. That language is: "The

state of a man's mind is as much a fact as the state of his digestion." See Keeton, Fraud—Statements of Intention, 1937, 15 Tex.LawRev., 185. In Whitcomb v. Moody, Tex.Civ.App., 49 S.W.2d 513, err. ref., at p. 514, the Court said:

> "* * * It has been said that the state of a man's mind is as much a state of facts as the state of his digestion. A misrepresentation as to a party's then intention or as to the present state of his mind is as much a misrepresentation of an existing fact as would be a misrepresentation of any other existing fact, and if by means of such misrepresentation a party is induced to execute a deed to land which he would not have otherwise executed, and is injured thereby, he is entitled to have the deed cancelled."

▉ Thus, proof of fraud in the making of a statement as to an existing or past objective fact does not require proof of the speaker's mental state as it relates to belief in the truth of the matter of the statement made. But where the statement relates to something that is to occur in the future, proof of the state of the mind of the speaker is necessary in order to establish the falsity of the statement. In such case it must be proved that the speaker did not have the intention, belief or opinion that he said he had.

It should be noted, of course, that there are some statements of opinion, made in connection with business transactions, that do not constitute actionable fraud regardless of the state of the mind of the speaker. An example is a statement by a seller as to value which may be considered mere "puffing" on which the buyer is not entitled to rely. Prosser, The Law of Torts, p. 738.

▉ The lessors also objected to Special Issues 6 through 10 on the ground that there was no evidence supporting affirmative findings to them and included assignments of error to that effect in their motion for new trial. They also made a motion to disregard those findings. There are "no evidence" points of error presented by appellant's brief. We sustain the point of error to the effect that there was no evidence to support the jury's finding, in response to Special Issue No. 7, that the representation made by Luciano that the Center would be completed in the near future was false.

▉ The language of Special Issue No. 6 is ambiguous, if not meaningless. Something that is to occur in the future cannot be a "then existing fact." As noted, the only "then existing fact" included in the statement by Luciano that the Center soon would be completed, was the existence of his intention, prediction or opinion that it would be so completed. Texas Farm Bureau Cotton Ass'n v. Craddock, supra. His statement could be false only if he did not so intend or believe. The lessee had the burden of proving that Luciano did not have the present intention of completing the Center soon thereafter or that he did not, at the time, have the honest belief or opinion that it would be so completed. Steine v. Hillcrest State Bank of University Park, Tex.Civ.App., 423 S.W.2d 443, no writ hist. The fact that the Center was not completed was not, standing alone, proof of the falsity of the statement of present intention or opinion. Turner v. Biscoe, (Com.App., opinion adopted), 141 Tex. 197, 171 S.W. 2d 118. There is no other evidence that tends to show the absence of such present intention or belief.

The judgment of the trial court is reversed and judgment here rendered that the lessors recover the rentals provided by the lease in question, less the $400 paid by the lessee and the $140 rent collected after the lessee had vacated, together with interest and costs.