COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-05-192-CV
  
  
  
IN RE BURK COLLINS, FOUNTAIN 
MALL, INC.,                           
RELATORS
AND MALL GROUP, LTD.
 
  
  
------------
 
ORIGINAL PROCEEDING
 
------------
 
OPINION
 
------------
Introduction
        In 
this original proceeding challenging the trial court’s grant of a motion to 
void a lis pendens, the primary issue we must resolve is whether, in deciding 
the motion, the trial court was required to look solely to the pleadings of the 
party who filed the notice of lis pendens to determine whether the party is 
claiming a direct or collateral interest in the real property at issue, or 
whether the trial court could look beyond the pleadings and consider evidence 
relevant to the question of whether the party’s alleged property interest is 
direct or collateral. Because we hold that the trial court could consider such 
evidence and was, in fact, required to do so in this case, but that the trial 
court should have denied the motion because the evidence raises a fact issue 
regarding the nature of the alleged property interest, we conditionally grant 
the writ of mandamus.
Background Facts and Procedural History
        Relators 
Burk Collins (an individual), Fountain Mall, Inc., and Mall Group, Ltd. 
(collectively, the Collins parties) are defendants and third-party plaintiffs in 
the underlying lawsuit. Michael Kest and the real party in interest, Tex Mall, 
L.P., are third-party defendants below.
        Collins 
and Kest are former business partners. Together, they and entities owned or 
controlled by them, including Fountain Mall and Mall Group, [1] 
formed a partnership known as North Hills Creek Mall, L.P. (Creek Mall). Creek 
Mall owned and operated a shopping center in North Richland Hills, Texas known 
as North Hills Mall (the Mall).
        In 
2003, Creek Mall breached certain loan covenants with its lender, and the lender 
foreclosed on the Mall property. Several months before the foreclosure, on March 
28, 2003, Kest and Collins entered into a Memorandum of Understanding (MOU) 
under which KCT Richland, a Kest affiliate, agreed to provide short-term capital 
for Creek Mall in exchange for promises from Collins. Among those promises was 
an agreement that the Collins parties would not oppose the foreclosure, if it 
occurred, that Kest could do “whatever [he] wish[ed] regarding the Mall,” [2] 
and that the parties would arbitrate any disputes over the terms of the MOU 
before the American Arbitration Association (AAA) in Los Angeles, California.
        The 
Collins parties assert that, in further consideration for Collins’s promises 
in the MOU, Kest agreed to convey a 50 percent interest in the Mall property 
back to him if the property went into foreclosure. The Collins parties concede, 
however, that the MOU does not contain this term. Collins acknowledges that he 
signed the MOU knowing that it lacked this term, but he contends his signature 
was subject to a separate memorandum, also dated March 28, 2003, in which he 
informed Kest that the MOU was “null and void” unless Kest agreed to the 
above-stated reconveyance in the event of foreclosure.
        The 
Mall property was foreclosed in Tarrant County in October 2003, and Tex Mall, a 
company Kest had formed, purchased the property. After the foreclosure, Kest did 
not give Collins an interest in the Mall property. The Collins parties contend 
that, since the foreclosure, Kest, through Tex Mall, has owned and operated the 
Mall.
        In 
January 2004, Kest sought and obtained an order from the trial court compelling 
arbitration of the parties’ disputes. Although arbitration was initiated, 
numerous related disputes and problems apparently arose.
        In 
June 2004, Fountain Mall and Mall Group filed a third-party petition in the 
trial court against Tex Mall and Kest. The third-party petition asserts claims 
of fraud, conspiracy to commit fraud, breach of fiduciary duty, and conspiracy 
to breach fiduciary duty. The third-party plaintiffs also seek a declaratory 
judgment that they own a 50 percent interest in the Mall property or Tex Mall. 
In addition, they seek money damages and a constructive trust on 50 percent of 
the Mall property.
        In 
conjunction with the third-party petition, the Collins parties filed a notice of 
lis pendens in the Tarrant County Real Property Records. Tex Mall and Kest both 
filed pleas in abatement, asking the trial court to abate the third-party suit 
until completion of the arbitration proceeding in Los Angeles. [3] 
Nothing further happened in the trial court or the arbitration proceeding until 
April 29, 2005, when Tex Mall moved to void the Collins parties’ lis pendens.
        Meanwhile, 
Tex Mall had begun efforts to develop the Mall property. In anticipation of 
completing certain real estate transactions, Tex Mall discovered the Collins 
parties’ lis pendens. In its motion, Tex Mall contends that the lis pendens is 
improper because title to land is not disputed in the third-party lawsuit and 
the suit does not seek to enforce an encumbrance on land. In support of its 
motion, Tex Mall asked the trial court to take judicial notice of certain 
documents. [4]
        After 
a hearing, on May 25, 2005, the trial court granted both the motion to void the 
lis pendens and the request for judicial notice. The Collins parties seek an 
order directing the trial court to vacate the May 25 order voiding the lis 
pendens. We have stayed that order pending the outcome of this original 
proceeding.
Issues
        The 
Collins parties complain of the trial court’s granting of Tex Mall’s motion 
to void lis pendens on two grounds:
   
1. The trial court abused its discretion by looking beyond the pleadings and 
hearing evidence on the nature of the Collins parties’ claimed interest in the 
Mall property.
2. Alternatively, the trial 
court abused its discretion by refusing to refer the motion to void the lis 
pendens to arbitration in Los Angeles.
 
  
Standard of Review
        In 
deciding whether a writ of mandamus is appropriate, we recognize that mandamus 
will issue only to correct a clear abuse of discretion or the violation of a 
duty imposed by law when there is no other adequate remedy at law. [5] 
Absent extraordinary circumstances, mandamus will not issue unless the relator 
lacks an adequate appellate remedy. [6]
        A 
trial court clearly abuses its discretion when it reaches a decision so 
arbitrary and unreasonable as to amount to a clear and prejudicial error of law. [7] 
With respect to the resolution of factual issues or matters committed to the 
trial court’s discretion, we may not substitute our judgment for that of the 
trial court unless the relator establishes that the trial court reasonably could 
have reached only one decision and that the trial court’s decision is 
arbitrary and unreasonable. [8] This burden is a heavy one. [9] 
Our review is much less deferential with respect to a trial court’s 
determination of the legal principles controlling its ruling because a trial 
court has no discretion in determining what the law is or in applying the law to 
the facts, even when the law is unsettled. [10] Thus, a clear 
failure by the trial court to analyze or apply the law correctly will constitute 
an abuse of discretion and may result in mandamus. [11]
Lis Pendens
        The 
lis pendens statute gives litigants a method to constructively notify anyone 
taking an interest in real property that a claim is being litigated against the 
property. [12] A notice of lis pendens may be filed during the 
pendency of an action involving (1) title to real property, (2) the 
establishment of an interest in real property, or (3) the enforcement of an 
encumbrance against real property. [13] “A recorded lis pendens 
is notice to the world of its contents,” regardless of whether service has 
been made on the parties to the proceeding. [14]
        If 
a notice of lis pendens satisfies the requirements of section 12.007, the trial 
court may not cancel it except as provided in section 12.008. [15] 
The trial court in this case did not cancel the lis pendens in accordance with 
section 12.008; therefore, if the lis pendens complies with section 12.007, the 
trial court’s order granting Tex Mall’s motion is improper.
        To 
satisfy section 12.007, the suit on which the lis pendens is based must claim a 
direct interest in real property, not a collateral one. [16] In 
other words, the property against which the lis pendens is filed must be the 
subject matter of the underlying lawsuit. [17] If the suit seeks a 
property interest only to secure the recovery of damages or other relief that 
the plaintiff may be awarded, the interest is merely collateral and will not 
support a lis pendens. [18]
        The 
parties disagree over what a trial court may consider in determining whether a 
suit involves a claim to a direct interest in property and, therefore, complies 
with section 12.007. The Collins parties assert that the trial court must limit 
its review to the pleadings of the party who filed the lis pendens. Tex Mall, on 
the other hand, contends that the trial court may look beyond the pleadings and 
consider evidence relevant to the question of whether the party’s alleged 
interest in the property is direct or collateral.
        The 
courts of appeals that have addressed this question appear to be split. The 
First Court of Appeals has held that the validity of a lis pendens must be 
determined based on the pleadings alone. [19] At least two other 
courts of appeals have followed the First Court. [20] Three of our 
sister courts, however, allow evidence to be considered in determining whether a 
lis pendens is improper. [21]
        In 
resolving this issue, we find the supreme court’s analysis in cases involving 
pleas to the jurisdiction instructive. The supreme court has held that when a 
plea to the jurisdiction challenges the pleadings, the trial court looks to the 
pleadings to determine if facts have been alleged that affirmatively demonstrate 
the court’s jurisdiction to hear the case. [22] If, however, a 
plea to the jurisdiction challenges the existence of jurisdictional facts, the 
trial court considers relevant evidence submitted by the parties to resolve the 
jurisdictional issues raised. [23] The trial court must not weigh 
the merits of the plaintiff’s claims, but must confine itself to the evidence 
relevant to the jurisdictional issue. [24]
        When 
the jurisdictional challenge implicates the merits of the plaintiffs’ cause of 
action, the court reviews the evidence relevant to the jurisdictional issue to 
determine if a fact issue exists. [25] If the evidence raises a 
fact question regarding the jurisdictional issue, the trial court must deny the 
plea to the jurisdiction, and the fact issue must be resolved by the fact 
finder. [26] If, however, the relevant evidence is undisputed or 
fails to raise a fact question on the jurisdictional issue, the trial court 
rules on the plea to the jurisdiction as a matter of law. [27]
        Applying 
these principles to the determination of a motion seeking the removal of a lis 
pendens, we hold that when the motion challenges the pleadings supporting the 
lis pendens, the trial court should examine the pleadings to determine whether 
the pleader has alleged facts that affirmatively demonstrate that the lis 
pendens is proper. [28] If, however, a motion seeking the removal 
of a lis pendens challenges the existence of facts supporting the pleader’s 
alleged interest in the property, the trial court should consider evidence 
relevant to the question of whether the alleged property interest is direct or 
collateral. In so doing, the trial court must not decide the merits of the 
parties’ claims, but must confine itself to the evidence relevant to the issue 
of whether the alleged property interest is direct or collateral.
        If 
the evidence raises an issue of fact regarding whether the alleged property 
interest is a direct interest, the motion should be denied and the issue must be 
resolved by the fact finder. If, however, the relevant evidence is undisputed, 
or fails to raise a fact question concerning the true nature of the alleged 
property interest, the trial court should rule on the validity of the lis 
pendens as a matter of law. We believe this rule strikes the necessary balance 
between protecting the plaintiff’s asserted interest in the property, on the 
one hand, and protecting the property owner from the adverse effects of a lis 
pendens that is based on a sham pleading, [29] on the other, 
without depriving the parties of the right to present the merits of their case 
at trial.
        We 
will now review the record in this case to determine whether the trial court 
abused its discretion in granting Tex Mall’s motion to void the Collins 
parties’ lis pendens under this standard.
        The 
third-party petition contains the following allegations:
   
In furtherance of his plan to purchase the North Hills Mall property at 
foreclosure, Kest convinced Collins to sign a Memorandum of Understanding (“MOU”).
  
Kest 
has committed fraud against Third-Party Plaintiffs by making promises and 
assurances that, after the foreclosure sale, Burk Collins would own a 50% 
interest in TEX MALL and the North Hills Mall property. In reliance upon these 
representations, Collins entered into the MOU, expended substantial funds, and 
allowed his interest in [Creek Mall] to be sold at foreclosure sale. These 
representations have caused injury to Collins and the Third-Party Plaintiffs 
including a loss of a 50% interest in [Creek Mall] and the North Hills Mall 
property.
   
TEX 
MALL has committed fraud against Third-Party Plaintiffs through the 
representations of its agent, and alter ego, Michael Kest. Specifically, Kest 
made repeated promises and assurances to Burk Collins and Third-Party 
Plaintiffs, that after the foreclosure sale, Burk Collins would own a 50% 
interest in TEX MALL and the North Hills Mall property.
   
TEX 
MALL conspired with Third-Party Defendant Michael Kest, to commit fraud on 
Third-Party Plaintiffs. Specifically, by purchasing the North Hills Mall 
property at a much-reduced price, TEX MALL benefited from the fraud committed by 
Michael Kest on Third-Party Plaintiffs.
   
Subsequent 
to the foreclosure sale, Collins has been repeatedly denied any interest in TEX 
MALL or the North Hills Mall property.
  
Third-Party 
Plaintiffs seek money damages as well as a constructive trust on at least 50% of 
the North Hills Mall property.
   
[T]he 
Court should declare that Third-Party Plaintiffs shall own an interest equal to 
at least 50% in either the North Hills Mall property or TEX-MALL.
     
        On 
the face of these pleadings, the Collins parties undoubtedly claim a direct 
interest in the Mall property. Tex Mall’s motion to void the lis pendens, 
however, challenges the existence of facts supporting the Collins parties’ 
alleged direct interest in the property. Specifically, Tex Mall asserts that the 
evidence conclusively shows the Collins parties have no valid claim to a direct 
interest in the Mall property, but only an interest in the now-dissolved Creek 
Mall partnership. In addition, Tex Mall argues that the Collins parties lack 
standing to assert an interest in the Mall property because the property 
belonged to the Creek Mall partnership, not to the Collins parties.
        As 
Tex Mall contends, there is evidence in the record that the Collins parties 
never owned a direct interest in the Mall property. For example, the Creek Mall 
limited partnership agreement provided that Creek Mall, not the Collins parties 
or the other partners, owned the Mall property. [30] Creek 
Mall’s ownership was also evidenced by two deeds of conveyance. In addition, 
the MOU specifically granted Kest “the right to do whatever [he] wish[ed] 
regarding the Mall, including without limitation” to purchase the Mall 
property at a foreclosure sale, and expressly waived the Collins parties’ 
right to acquire an interest in the Mall property at a trustee’s sale. 
Moreover, the Collins parties concede that the MOU does not give them an 
ownership interest in the Mall property.
        This 
evidence, however, is controverted by other evidence showing that the Collins 
parties may have owned a direct interest in 50 percent of the Mall property by 
virtue of their former interest in Creek Mall and the partnership agreement’s 
in-kind distribution provision. [31] In addition, a March 25, 2003 
memo from Collins to Kest, which predates the MOU by three days, states, in 
pertinent part,
Mike:
We 
need to draw up an Agreement today that reflects the understanding you and I 
have going forward with the North Hills Mall (“Mall”). The following is my 
understanding:

                . 
. . .
5.In 
the event Michael Kest or any of his entities purchase the Mall note or purchase 
the property at foreclosure then Burk Collins will retain all of his 
ownership in the Mall property . . . . [Emphasis supplied.]

The 
word “NO” is handwritten next to paragraph 5. Kest testified that he made 
this notation because he interpreted the paragraph as Collins saying that “he 
[Collins] would retain 50 percent ownership of the Mall property 
going forward in case there was a foreclosure, and I said no.” [Emphasis 
supplied.] This is some evidence that Kest believed Collins had an interest in 
the Mall property when Collins signed the MOU.
        Further, 
the Collins parties rely on the March 28 memorandum that Collins purportedly 
sent to Kest with the signed MOU, which states,
   
I [Collins] understand the problem you have with your family and do not want our 
understanding put in the base Agreement. However, I want an understanding that 
we have an agreement that if [events do not occur to keep the Mall property out 
of foreclosure] and you decide to foreclose or acquire the Mall property off the 
Courthouse steps that you will give me back my 50% interest after 
foreclosure. This Memo is a condition to my signature on the Memo of 
Understanding. If you do not agree then the document is null and void. [32] 
[Emphasis supplied.]
 
  
        In 
sum, we believe that the evidence presented to the trial court raises a fact 
issue on the question of whether the Collins parties have a direct interest in 
the Mall property, as they allege in their pleadings. Accordingly, we hold that 
the trial court clearly abused its discretion by granting Tex Mall’s motion to 
void the lis pendens.
Inadequate Remedy at Law
        We 
must now consider whether the Collins parties have an adequate remedy by appeal.
        It 
is well settled that mandamus is the appropriate remedy when issues arise 
concerning the propriety of a notice of lis pendens. [33] In this 
case, the trial court’s order voiding the Collins parties’ lis pendens 
renders them unable to protect their alleged interest in the Mall property 
during the pendency of their third-party lawsuit. The trial court’s order is 
not conditioned on Tex Mall’s payment of a monetary deposit or the giving of 
an undertaking to protect the Collins parties, [34] and given Tex 
Mall’s plans to develop the Mall property, an appeal of the lis pendens ruling 
following trial on the merits of the third-party claims would be wholly 
inadequate. Accordingly, we hold that the Collins parties lack an adequate 
remedy by appeal. [35]
Conclusion
        Having 
determined that the trial court clearly abused its discretion in granting Tex 
Mall’s motion to void the lis pendens, and that the Collins parties have no 
adequate remedy by appeal, [36] we lift our stay of the trial 
court’s May 25, 2005 order granting Tex Mall’s motion to void the Collins 
parties’ lis pendens and conditionally grant a writ of mandamus directing the 
trial court to vacate that order. Because we are confident that the trial court 
will enter the appropriate order, our writ will issue only if the court fails to 
do so.
    
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
  
 
 
PANEL A:   CAYCE, 
C.J.; GARDNER and WALKER, JJ.
 
DELIVERED: August 26, 2005

 
NOTES
1. 
Collins owns Fountain Mall, Inc. and Mall Group, Ltd. Kest owns or controls Tex 
Mall, as well as KCT Richland, LP, a California limited partnership, and the 
Kest Children’s Trust.
2. 
The MOU actually gives this right to the “Kest-Constituents,” which include 
Kest, individually and as trustee of the Kest Children’s Trust, KCT Richland, 
and several other companies, partnerships, and individuals. Because the 
identities or existence of these other individuals and entities do not affect 
our disposition of this original proceeding, we refer to them simply as “Kest.”
3. 
Initially, Tex Mall also indicated its willingness to participate in 
arbitration, despite its position that it was not bound by the MOU’s 
arbitration provision. Since this original proceeding was filed, however, Tex 
Mall has withdrawn its plea in abatement and stated that it is no longer willing 
to participate in arbitration.
4. 
Those documents include (1) the Creek Mall partnership agreement; (2) two deeds 
conveying the Mall property to Creek Mall; (3) a March 25, 2003 memo from 
Collins to Kest (not to be confused with the March 28 memo from Collins to Kest); 
(4) the MOU; (5) the third-party petition; and (6) the notice of lis pendens.
5. 
In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004); Walker 
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).
6. 
In re Van Waters & Rogers, Inc., 145 S.W.3d 203, 210-11 (Tex. 2004).
7. 
Walker, 827 S.W.2d at 839.
8. 
Id. at 839-40.
9. 
Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex. 1994) 
(orig. proceeding).
10. 
Prudential Ins. Co., 148 S.W.3d at 135; Walker, 827 S.W.2d at 840.
11. 
Walker, 827 S.W.2d at 840.
12. 
Garza v. Pope, 949 S.W.2d 7, 8 (Tex. App.—San Antonio 1997, orig. 
proceeding); King v. Tubb, 551 S.W.2d 436, 444 (Tex. Civ. App.—Corpus 
Christi 1977, no writ).
13. 
Tex. Prop. Code Ann. § 12.007(a) 
(Vernon 2004).
14. 
Id. § 13.004.
15. 
A properly filed lis pendens can only be cancelled conditioned on the payment of 
a monetary deposit or the giving of an undertaking that will adequately protect 
the party who filed the lis pendens. Id. § 12.008(a); see also In re 
Kroupa-Williams, No. 05-05-00375-CV, 2005 WL 1367950, at *4 (Tex. 
App.—Dallas June 10, 2005, orig. proceeding)(mem. op); Hughes v. Houston 
N.W. Med. Ctr., 647 S.W.2d 5, 7 (Tex. App.—Houston [1st Dist.] 1982, writ 
dism’d) (the latter applying predecessor to sections 12.007–.008).
16. 
See Tex. Prop. Code Ann. § 
12.007(a); see also Kroupa-Williams, 2005 WL 1367950, at *3 (holding that 
claim of community property interest in real property in divorce proceeding was 
sufficient to support lis pendens); In re Fitzmaurice, 141 S.W.3d 802, 
805 (Tex. App.—Beaumont 2004, orig. proceeding) (“Those cases in which lis 
pendens has been disallowed are those in which the subject property is 
collateral to the litigation.”).
17. 
See Moss v. Tennant, 722 S.W.2d 762, 763 (Tex. App.—Houston [14th 
Dist.] 1986, orig. proceeding); see also Hughes, 647 S.W.2d at 7 (holding 
that lis pendens was proper when filed against partnership-owned property in 
suit by partner that alleged contract for sale of property had been procured by 
fraud).
18. 
See, e.g., Flores v. Haberman, 915 S.W.2d 477, 478 (Tex. 1995) (orig. 
proceeding) (holding that if the plaintiffs seek a constructive trust only to 
satisfy a judgment that they might obtain against the defendant, “the interest 
is no more than a collateral interest in the property,” and the lis pendens is 
void); In re Med Plus Equity Inv., LP, No. 05-05-00404-CV, 2005 WL 
1385238, at *1 (Tex. App.—Dallas June 13, 2005, orig. proceeding) (mem. op.) 
(holding that suit for interest in partnership will not support lis pendens); Moss, 
722 S.W.2d at 763; Helmsley-Spear of Tex., Inc. v. Blanton, 699 S.W.2d 
643, 645 (Tex. App.—Houston [14th Dist.] 1985, orig. proceeding) (both holding 
that suits seeking lien against real property to secure recovery of damages for 
fraud and breach of lease, respectively, will not support lis pendens).
19. 
See In re Mousa, No. 01-04-00485-CV, 2004 WL 2823172, at *1-2 (Tex. 
App.—Houston [1st Dist.] Dec. 9, 2004, orig. proceeding) (mem. op.); First 
Nat’l Petro. Corp. v. Lloyd, 908 S.W.2d 23, 25 (Tex. App.—Houston [1st 
Dist.] 1995, orig. proceeding); Hughes, 647 S.W.2d at 6.
20. 
See In re Med Plus Equity Inv., 2005 WL 1385238, at *1; In re Jamail, 
156 S.W.3d 104, 107 (Tex. App.—Austin 2004, orig. proceeding)(mem.op.).
21. 
See In re Wolf, 65 S.W.3d 804, 805 (Tex. App.—Beaumont 2002, orig. 
proceeding) (rejecting plaintiffs’ argument that expressly requesting and 
praying for an interest in real property was sufficient to support lis pendens); 
Francis v. Sterling, 45 S.W.3d 194, 196 (Tex. App.—Tyler 2001, no pet.) 
(holding that plaintiff lacked statutory authority to file lis pendens in case 
in which title to subject property had been litigated to final judgment seven 
months before lis pendens was filed); Khraish v. Hamed, 762 S.W.2d 906, 
909 (Tex. App.—Dallas 1988, writ denied) (holding that lis pendens filed 
against property that was not subject of loan agreement at issue in suit was 
improper). We note that decisions from the Dallas court have come down on both 
sides of this issue. Compare Med Plus Equity Inv., 2005 WL 1385238, at *1 
(limiting scope of review to pleadings) with Kraish, 762 S.W.2d at 909 
(considering pleadings and evidence).
22. 
Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 
(Tex. 2004); Tex Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 
446 (Tex. 1993).
23. 
Bland ISD v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).
24. 
County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002); Bland ISD, 
34 S.W.3d at 555.
25. 
Miranda, 133 S.W.3d at 227.
26. 
Id. at 227-28.
27. 
Id. at 228.
28. 
In conducting this examination, the trial court should construe the pleadings 
liberally in favor of the plaintiff and look to the pleader’s intent. See 
id. at 226. If the pleadings do not contain sufficient facts to 
affirmatively demonstrate the propriety of the lis pendens, the plaintiffs 
should be afforded the opportunity to amend before the court rules on the 
motion. See id. at 223-27. If the pleadings affirmatively negate the 
existence of facts supporting the lis pendens, then the motion to remove the lis 
pendens may be granted without allowing the plaintiffs an opportunity to amend. See 
id. at 227; see also Flores, 915 S.W.2d at 478 (lis pendens declared 
void as a matter of law because plaintiffs alleged in their pleadings “no more 
than a collateral interest in the property”).
29. 
See, e.g., Prappas v. Meyerland Cmty. Improvement Ass'n, 795 S.W.2d 794, 
795 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (noting that filing of 
lis pendens resulted in failure of real estate transaction); Ransopher v. 
Deer Trails, Ltd., 647 S.W.2d 106, 108 (Tex. App.—Houston [1st Dist.] 
1983, no writ) (stating that lis pendens notice may prevent party from selling 
or using the property while underlying suit is pending); King, 551 S.W.2d 
at 443-44; Black v. Burd, 255 S.W.2d 553, 555 (Tex. Civ. App.—Fort 
Worth 1953, writ ref’d n.r.e.) (both stating that ultimate effect of lis 
pendens is to prevent either party to litigation from alienating property that 
is in dispute).
30. 
The Creek Mall limited partnership agreement contained the following provision:
Partnership 
Property shall be deemed to be owned by the Partnership as an entity, and no 
Partner, individually or collectively, shall have any ownership interest 
in such Partnership Property or any portion thereof. Title to any or all 
Partnership Property may be held in the name of the Partnership. [Emphasis 
supplied.]
31. 
Although Tex Mall contends that the Creek Mall partnership agreement 
“grant[ed] no . . . right” to anything except a cash distribution, the 
partnership agreement contained an in-kind distribution provision. This 
provision states:
Section 13.4. Distribution of Partnership Property 
and Proceeds of Sale Thereof.
A. 
Order of Distribution. Upon completion of all desired sales of Partnership 
Property, and after payment of all selling costs and expenses, the Liquidator 
shall distribute the proceeds of such sales, and any Partnership Property 
that is to be distributed in kind . . . . [Emphasis supplied.]
32. 
Tex Mall contends that the parole evidence rule, the statute of frauds, and the 
merger doctrine “render ineffectual” any claim that the Collins parties have 
based on this memo, because the memo predates the signing of the MOU. The parole 
evidence challenge is not preserved for our review because the trial court did 
not rule on the admissibility of the memo at the lis pendens hearing. See 
Tex. R. App. P. 33.1(a)(2) 
(providing complaint is not preserved unless both objection and ruling appear in 
record). We decline to address Tex Mall’s statute of frauds and merger 
arguments because they would require us to decide the merits of the parties’ 
claims. Our determination of whether facts exist to support the Collins 
parties’ claim to a direct interest in the Mall property is confined to the 
evidence relevant to this issue.
33. 
See Flores, 915 S.W.2d at 477-78; First Nat’l Petro. Corp., 908 
S.W.2d at 24-25.
34. 
See Tex. Prop. Code Ann. § 
12.008(a).
35. 
See Prudential Ins. Co., 148 S.W.3d at 135-36; Van Waters & 
Rogers, 145 S.W.3d at 210-11; Walker, 827 S.W.2d at 839.
36. 
In light of our disposition of the Collins parties’ first issue, we need not 
consider their alternative issue based on arbitration. See Tex. R. App. P. 47.1.